THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENTS, *v.* EDWARD HOVEY, APPELLANT.

*Evidence — right of a husband upon his trial for murder to call his wife as a witness in his behalf — right of the jury to consider his failure so to do — the presumption is that the wife will tell the truth — the accused may be asked how often he has been in prison — what is sufficient evidence of premeditation and deliberation.*

The defendant was tried and convicted of murder in the first degree for shooting his sister-in-law. There was present at the time of the shooting the deceased, the defendant and his wife. The defendant was examined in his own behalf and testified that the shooting was accidental. The judge in his charge said: "There is no eye witness who has testified to the occurrence except the defendant. The people claim and the uncontradicted evidence established that there was another eye witness to this occurrence, namely, the wife of the

defendant. You remember when the wife was offered as a witness on behalf of the people the court would not allow her to be examined as a witness against her husband, for in my judgment the law does not permit it; but while that is so the law does allow the wife to be a witness in her husband's behalf, and the people claim that inasmuch as it appeared in evidence that she was an eye witness to the occurrence, accessible to the defendant, and the defendant allowed by the law to call her as his witness, and having neglected to do so, that this is a circumstance which the jury have a right to consider in coming to a conclusion. And the people claim, moreover, that the prisoner's omission to call her as a witness under the above circumstances should be taken as a matter of evidence against him, and they claim that the fair presumption is that if she was called her testimony would not be favorable to the defendant."

*Held*, that there was no error in the charge.

Section 2 of chapter 182 of 1876, provides that "in all criminal trials and examinations before trial a husband or wife may be examined as a witness in behalf of the other, but upon no such trial or examination shall a husband or wife be compelled to testify against the other." It was claimed by the defendant in this action that under this statute it was optional with the wife whether or not she would become a witness in behalf of her husband, and that he could not compel her so to do.

*Held*, that this was an erroneous construction of the statute; that under it the husband had the right to compel the wife to testify, and that if she failed so to do she could be punished for a contempt.

The defendant claimed that the presumption was that the wife was hostile to him, and that he was not therefore obliged to use her as a witness or be subjected to any criticism because he did not call her.

*Held*, that this was not so, that the presumption was that the wife would tell the truth.

Upon his cross-examination the defendant was asked how many times he had been in prison.

*Held*, that this was allowable under section 832 of the Code of Civil Procedure.

The evidence in this case, considered and held to justify the jury in finding that the killing was committed from a deliberate and premeditated design to effect the death of the person killed.

APPEAL from a judgment and conviction of the defendant upon his trial for murder in the first degree in the Court of General Sessions of the Peace in and for the city and county of New York.

*William F. Kintzing*, for the appellant.

*John McKeon*, for the respondents.

BRADY, J.:

The defendant was indicted and convicted of murder in the first degree for killing his sister-in-law, Fannie Vermilyea, on the 20th

of April, 1882. At the time of the killing, the deceased and the appellant occupied different apartments on the same floor of a boarding-house, situate at No. 273 West Thirty-eighth street in this city. On the night preceding the homicide the deceased took from the defendant a pistol which he was in the habit of carrying and hid it. At this time his child, who was an infant, was seriously ill with the scarlet fever.

On the following morning, *i. e.*, the day of the killing, the defendant, in the presence of the deceased, wanted his wife to wash his feet, when the deceased said to him: "Eddie, you ought to have more thought for your dying baby." To which he replied: "You're getting too God damned high-toned" He soon after left the house, but returned at about one o'clock in the afternoon for dinner, having taken which he again left, and some time during the afternoon went to a pawnbroker's shop, where he pawned his coat, purchased a pistol, loaded it, and returning to his house, went to the room of the deceased and shot her, the ball passing through the lung, and death ensuing within a few minutes. This occurred about twenty-five minutes after his return. He then went out into the hallway connected with the room, where he was seen by another sister of his wife, namely, Sophia McCullough, who, having been called as a witness, testified that, having heard the shot, she asked him what he had done; to which he responded, "nothing," although the pistol was still in his hand. She further testified that he then went into her sister's room again, and she ordered him out; whereupon he went across the hall to his own room, where his sick child was lying. The witness then requested him not to touch the baby; to which he responded, alluding to the witness: "You little son of a bitch if you don't get out of this room I will kill you, too."

It appears further from the testimony of Mrs. Byrnes that her attention was directed to the shooting by the request of the deceased, "Mrs. Byrnes, save me!" Whereupon she ran to her and caught her in her arms. While she was thus holding the deceased, the prisoner was brought into her presence, when the witness said to him: "Look what you have done!" and he laughed. This was at the moment when the deceased was "just departing," to use the language of the witness, and he was in the custody of the officer — indeed, had walked over the dead feet of the deceased, as the wit-

ness stated.   The laugh seems to have been the only indication of
his consciousness of the observation which was made to him by the
witness.

The officer who arrested him, at the time of his arrest and in the
house where the shooting took place, asked him if he was the man
who did the shooting ; to which he said " yes."

As they passed over the body of the deceased he said to him :
" Is that the woman you shot ? "   And the prisoner answered " yes."
The officer further asked him : " Is that (exhibiting it) the pistol
you shot her with ? "   To which he replied " yes," saying in addi-
tion : "And if I had another bullet in that pistol you never would
have taken me from that room."   The officer further testified that
having taken him to the station-house, the sergeant asked him if he
shot the woman, to which he replied " yes."   The sergeant then
further asked, " what did you shoot the woman for ? "   And the
answer was that that was his business and not the sergeant's.

Upon this testimony, the effect of which the appellant essayed to
overcome by his story, which was that the shooting was accidental,
the jury found him guilty of murder in the first degree.

There was evidence on the part of the defense to show, doubtless
to account for the possession of it, that from his boyhood it had
been the habit of the defendant to carry a pistol.   It will have been
observed from this statement of the case that no witness was called
who saw the shooting, except the defendant, who committed the
deed, and therefore the importance of the circumstances mentioned
must impress itself at once upon the mind on the question of pre-
meditation and deliberation, which were necessary elements to
establish the guilt of the appellant to the extent pronounced by the
verdict herein.

On the night preceding the killing, as we have already seen, the
deceased took the defendant's pistol and hid it, and no doubt from
a good motive.   It is true he says he was in the habit of giving her
his pistol at night, and this necessarily involved the ceremony of
returning it to him upon the following day ; but on this occasion
the pistol was not returned, it was hid.   It is a slight circumstance
it is true, but unfortunately for the viciously inclined the history of
crime shows that violent deeds are sometimes committed upon very
slight provocation.

In addition to this circumstance, however, as we have seen, the appellant wished his wife to wash his feet, and at a time which, in consequence of the severe illness of his child, and who died the next day, seems to have been most solemn. The deceased reminded him of that fact by saying, "Eddie, you ought to have more thought for your dying baby," an observation with which he was evidently displeased, because, as we have already seen, his answer was, "You are getting too God damned high toned." The hiding of the pistol and the observation of the deceased appear to have been proper in themselves, and not calculated to produce very great excitement.

They seem, however, to have aroused within him a malevolent sentiment, a passion for revenge, which was to be appeased only by slaughter. Unless we accept his story that the shooting was accidental, no other view can be taken of the occurrence.

It was the feeling suggested that induced him to pawn his coat and to buy the pistol and load it. It is proper to observe here that there is no evidence in the case showing that he was engaged in a calling which required such a weapon for his protection, or that he was in imminent danger in any respect, and therefore the loading of the pistol in the pawnbroker's shop, marked by the preceding circumstances to which reference has been made, must have been with an object, and that object was the killing of the deceased and was carried into execution within a few hours after the purchase of the pistol. The causes which led to the act are trivial, it is true, when judged by the ordinary standard of human action, but in a bad-tempered man, a person easily excited, quickly inflamed, destitute of a decent sense of propriety and more particularly if a criminal by habit, they might be and indeed in this case seem to have been quite sufficient to instigate the crime of which the defendant was convicted. That he was a criminal by habit or, if the word habit is not justifiable, that he was a criminal at all events, is shown by his cross-examination, for when he was asked how often he had been in prison, he said three times, and each time for stealing.

The jury took all these circumstances into consideration and the fact also that the defendant's wife was present when the deceased was shot and could have been called as a witness on his behalf. He failed to call her to corroborate, if she could do so, his statement as to the shooting being accidental. It is impossible for us to say,

therefore, under all the facts and circumstances to which reference has been made that the jury were not entirely justified in finding the prisoner guilty of murder in the first degree — premeditated and deliberate murder.

The learned judge in charging the jury said: "There is no eye witness who has testified to the occurrence, except the defendant. The people claim, however, and the uncontradicted evidence established that there was another eye witness to this occurrence, namely, the wife of the defendant. You remember when the wife was offered as a witness, on behalf of the people, the court would not allow her to be examined as a witness against her husband, for in my judgment, the law does not permit it, but while that is so the law does allow the wife to be a witness in her husband's behalf, and the people claim that inasmuch as it appeared in evidence, that she was an eye witness to the occurrence, accessible to the defendant, and the defendant allowed by the law to call her as his witness, and having neglected to do so, that is a circumstance which the jury have a right to consider in coming to a conclusion. And the people claim, moreover, that the prisoner's omission to call her as witness under the above circumstances, should be taken as a matter of evidence against him, and they claim that the fair presumption is, that if she was called, her testimony would not be favorable to the defendant."

No exception was taken to the observations thus quoted, but, after the verdict of guilty had been rendered and at a sitting of the court upon the 29th of September, 1882, when the appellant was arraigned for sentence, a motion was made for a new trial.

*First.* Upon the ground that the verdict was against the weight of evidence ; and,

*Secondly.* That there was not sufficient evidence in the case to show that the act was the result of a premeditated and deliberate design to effect death.

And the counsel for the defendant, in connection with these two grounds, urged the error which it was alleged had been committed by the learned judge presiding, in making the observations which have been quoted. The application was made under section 527 of the Code of Criminal Procedure, which provides that in cases of this character, tried in the Court of General Sessions, the appellate court

may order a new trial, if it be satisfied that the verdict against the prisoner is against the weight of evidence or against law, or that justice requires a new trial, whether any exceptions shall have been taken or not in the court below. In the consideration of this case the appellant should therefore be given the full benefit of this section.

The question of premeditation has already been discussed, as will have been seen, and a result arrived at unfavorable to him, and the disposition of it in the court below sustained. The verdict was not against the weight of evidence; there was sufficient proof that the killing was the result of a premeditated and deliberate design to effect death.

No error seems to have been committed either by the remarks of the learned judge in reference to the omission of the defendant to call his wife as a witness. It will have been perceived that in commenting upon this circumstance the learned judge merely repeated the claim made on behalf of the people, namely, that the prisoner's omission to call her as a witness, under the circumstances disclosed in the charge, should be taken as matter of evidence against him; that the fair presumption was that had she been called her testimony would not have been favorable to him. It was not asserted, as a conclusion of law, that such a result must follow, or that such must be the consideration given to the circumstance by the jury, but a statement merely of the claim put forth by the prosecution of the argument on behalf of the people; that the omission was one which should be regarded by the jury as prejudicial to the prisoner. The facts affecting it are that his wife was in court and that she was called as a witness by the prosecution, but excluded upon the objection of the prisoner's counsel. It seems to have been conceded that she was present at the time of the shooting, and, therefore, could have stated the circumstances attending the act. The charge is clearly within the rule of law, as enunciated by the adjudged cases.

In the case of *Gordon* v. *The People* (33 N. Y., 508) it was held that when one accused of the crime of murder was required to account for his whereabouts at a particular time to avoid the force of criminating circumstances, his omission to produce the evidence is not conclusive of the facts in dispute, but the force of such cir-

cumstances may be left for the consideration of the jury. The absence of such evidence, the court said, especially when it seems to be in the power of the prisoner to furnish it, creates a strong presumption of his guilt, a strong inference against him, and is a circumstance greatly corroborative of the truth of the evidence given upon the other side, and in a doubtful case would justify the jury in resolving the doubt against him.

The case of *Gordon* v. *The People* is cited with approbation, and the rule is substantially reiterated in the case of *Bleecker* v. *Johnston* (69 N. Y., 309); see, also, *Brooks* v. *Steen* (6 Hun, 517); also the case of *The People* v. *Tweed* (5 Hun, 387), in which the learned judge, in discussing the subject, said that the omission to furnish an affidavit denying the facts upon which an order of arrest was founded, rendered it probable that he could not truthfully do it, and the effect of it was to increase the force of the circumstances disclosed as well as the probability that the statements made by two of his accomplices as to what really did take place were true, and the court then states the rule declared in the case of *The People* v. *Gordon* (*supra*).

Under these circumstances, and in view of these authorities, it is quite clear that no error was committed by the learned judge in simply stating to the jury the claim made on behalf of the people without telling them the effect of it, and without in any way expressing any opinion about it, presenting it as he did for the consideration of the jury, and leaving it entirely with them to determine its weight and effect.

It is said on behalf of the appellant that the presumption must be that his wife was hostile to him, and that he was not, therefore, obliged to use her as a witness or to be subjected to any criticism because he did not call her. This view is fallacious. The presumption is that she would tell the truth, and the appellant must take the consequences of such presumption.

It is also urged that, under section 2 of the law of 1876 (chap. 132), it was optional with the wife whether she would become a witness or not on behalf of her husband, that act depending upon her own will and being free from any control of her husband. This view is predicated of this language of the section : " In all criminal trials, and examinations before trial, a husband or wife *may* be

examined as a witness on behalf of the other," but it is clearly erroneous. The legislature meant to confer, and did so, upon the husband the privilege, in a criminal proceeding against him, of calling his wife as a witness, if he chose to do so — not to give her any other right than to call him, if she chose to do so, under similar circumstances. She could not decline to become a witness or exercise any option in regard to it. If called by him she must respond, or be punished for contempt. It is the husband's right to call her, and as well the wife's right to call him, by the same section. They may be witnesses, if the right thus conferred is exercised by either, but cannot be compelled to testify against each other at the call of any other person hostile to either. This construction of the statute is demanded by its language. If it be not, then no benefit was created by the section and it is a nullity.

Nor was it error to allow the defendant, upon cross-examination, to be asked how many times he had been in prison.

Section 832 of the Code of Civil Procedure expressly authorizes such a line of examination. It declares that a person who has been convicted of a crime may be asked, on cross-examination, as to the facts. Not only that, but it provides that the person cross-examining is not concluded by his answer to such a question; so that if the witness falsely states that he was not convicted his testimony may be disproved.

The points presented on behalf of the appellant have thus been considered, and the duty of the court requires, for the reasons stated, a declaration that he shall take nothing by his appeal, and that the judgment should be affirmed.

DAVIS, P. J., and DANIELS, J., concurred.

Ordered accordingly.